IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
BUFFALO DIVISION

| Theresa Mullery, | ) | | |
| --- | --- | --- | --- |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 18 C 0549-LJV |
| | ) | | |
| JTM Capital Management, LLC, a | ) | | |
| Delaware limited liability company, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| Amanda Perry, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 18 C 00566-LJV |
| | ) | | |
| JTM Capital Management, LLC, a | ) | | |
| Delaware limited liability company | ) | | |
| | ) | | |
| Defendant. | ) | | |

## PLAINTIFF'S SUPPLEMENTAL REPLY
## BRIEF REGARDING STATE DEFINITIONS OF "DEBT COLLECTOR"

Plaintiffs hereby reply regarding the supplemental briefing requested by this Court in regards to Defendant JTM's Rule 12(b)(6) Motion to Dismiss:

## INTRODUCTION

Theresa Mullery, a low-income senior citizen from the State of New York, and Amanda Perry, a low-income disabled woman from South Carolina, each sought legal assistance regarding credit card bills they were unable to pay. Thus, their legal aid attorneys at the Chicago Legal Clinic's Legal Services for Seniors and People with Disabilities ("LASPD") advised their creditors that they were

represented by counsel as to these debts, that they refused to pay these debts, and that their income was not subject to lien or garnishment.

Subsequently, Defendant JTM purchased portfolios which contained Ms. Mullery's and Ms. Perry's defaulted debts. JTM either ignored the information in the files it had obtained as to Ms. Mullery's and Ms. Perry's refusal to pay and representation by an attorney[1], and as such, continued to collect the debts from Ms. Mullery and Ms. Perry directly, through third-party collectors, in spite of Plaintiff's notices.

Defendant has argued for dismissal on the basis of that, as a "passive debt buyer" – a term invented by the debt-buying industry, with no statutory basis whatsoever – it is not a debt collector under §1692a(6) of the FDCPA. Plaintiffs have cited all publicly available information which indicates that, contrary to its denials, JTM's principal, if not sole, purpose is debt collection. This includes

---

1. At oral argument, this Court asked Plaintiff's, Brian Bromberg, why Plaintiffs had not sued the debt collectors who sent them the letters after they had given notice of attorney representation and refusal to pay, but instead sued only the debt buyer, Defendant JTM (*see*, Transcript of Oral Argument, March 15, 2019, attached as <u>Exhibit A</u>, at 12). Here, JTM, as purchaser of all title to the debt, is subject to all of the rights and limitations that are associated with the debt, where as the third-party collectors it hired are able to reasonably rely on information provided (or not provided, in this case) to them by the owner of the debt, *see*, *Randolph v. IMBS*, 368 F.3d 726, 729-30 (7th Cir. 2004) (holding that a third-party debt collector was not imputed with knowledge in the creditors' files); *see also*, *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77 (N.D.N.Y. 2001)(holding that if a debt buyer fails or refuses to request notices of attorney representation sent to its predecessors-in-interest, and, as a result, collects from a consumer directly, and such conduct is permitted under the FDCPA, it would create a system that would reward this type of willful ignorance and permit impermissible collection communications, *see*, *Micare*, 132 F. Supp. 2d at 80.)

information on its website and its licenses to conduct business as a "debt collector" in at least 19 states.

At oral argument, this Court asked the parties for additional briefing as to the significance of JTM's state debt-collection licenses, any additional authority in which the issue of whether a debt buyer is a §1692a(6) "principal purpose" collector had been decided on a Rule 12(b)(6) motion, and responses as to Plaintiff's supplemental authority of the Third Circuit's recent decision in *Barbato v. Greystone Alliance*, 916 F.3d 260, 268-69 (3rd Cir. 2019). Although this Court stated, at oral argument that "[Y]ou can put anything in [this supplemental briefing] that you want to put in" (Exhibit A, p. 22), it was also clear that this supplemental briefing was not intended to be an opportunity to rehash non-binding authority cited by either party, *see e.g.*, Exhibit A at 3-4.

ARGUMENT

I. The Majority Of States In Which Defendant JTM Is Licensed To Collect Debts Regulate Both "Direct And Indirect" Collections.

Defendant JTM is licensed as a debt collector in eighteen (18) states, as well as the City of New York. Each state's requirements for licensure differ slightly, but, of these, 14 states mirror the definition of "debt collector" in §1692a of the FDCPA, regulating both direct and indirect collection attempts, without any specific mention of "debt buying", *see*, *Mullery*, Dkt. 50, Perry, Dkt. 48, citing, Florida Consumer Protection Act Title XXXIII Sec. 559.55 (7) (2016); Idaho Code § 26-2223(2)(5)&(6), Indiana Code 25-11-1(b); Iowa Code § 537.7102(5) (2016); Kansas (KS Stat § 50-

624(l) (2015)[2]; Louisiana Rev Stat § 9:3534.1; Maine Stat § 32 -11002(6); Maryland Bus Reg Code § 7-101(d); New York, 23 NYCRR 1.1(e) &-(f); North Carolina Gen Stat § 58-70-15(a); Texas Finance Code Ch. 392.001(6); Utah Code § 12-1-11(1)[3]; Washington, RCW 19.16.100(a-b); and West Virginia, Collection Agency Act of 1973, 47-16-2(b).

Three additional states, Colorado (Colo. Rev. Stat. § 5-16-103(8.5)), Connecticut (CT 36a-800(3)), and Illinois (225 ILCS 425/2 Collection Agency Act), explicitly require licensure of debt buyers. Moreover, unlike any of the other states in which Defendant JTM has licenses, Michigan's licensure requirement only covers entities which engage in direct collection from consumers, see, MI Stat § 339.901(1)(b), (e).

According to Defendant JTM, its licensure in these states is nothing more than "an abundance of caution" (Mullery, Dkt. 51, p. 5; Perry, Dkt. 49, p. 5). This argument does not pass the straight face test. The more obvious conclusion here is that many states have acknowledged that both direct and indirect debt collection, as well as debt buying in some states, impact consumers and must be regulated and

---

2. Defendant references KS Stat § 16a-1-301(45), 16a-2-301 -- which it claims requires it to obtain a license as a "supervised lender" in Kansas, but fails to note that the Kansas Unfair Trade and Consumer Protection Act, KS Stat § 50-624(l), specifically regulates "manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, **whether or not dealing directly with the consumer**.", *i.e.*, whether the entity interacts directly, or indirectly, with the consumer.

3. The Utah "debt collector" definition specifically adopts the definitions in 15 U.S.C. §1692a, expanding it to include entities which do not rely on interstate commerce or the mail.

licensed.  There is simply no other plausible reason that states would do this, aside from furthering the goals of protecting the least sophisticated consumer, who is impacted by the decisions of both direct and indirect collectors.

Specifically, here, Ms. Mullery and Ms. Perry directed their creditors to cease contacting them regarding debts which they were unable to pay and for which they had attorney representation.  JTM's decision to outsource the collection of their debts to other agencies, in spite of these notices of attorney representation and refusal to pay, harmed the Plaintiffs.  Both women believed they were entitled to the peace of mind of being left alone when they exercised their rights pursuant to the FDCPA.  JTM's collection actions – regardless of whether they were outsourced – harmed Ms. Mullery and Ms. Perry and are the exact types of activities that the FDCPA sought to regulate.

> II. Rule 12(b)(6) Dismissal Is Unwarranted; Plaintiffs Should Be Entitled To Conduct Discovery As To JTM's "Principal Purpose".

Defendant was given the opportunity to provide additional instances of the dismissal pursuant to Rule 12(b)(6) of allegations made against a debt buyer alleged to be a "principal purpose" debt collector pursuant to §1692a(6) of the FDCPA, see, Exhibit A, p. 16.  Although Defendant's counsel expressed hope that the 9th Circuit's opinion on the appeal of *McAdory v. M.N.S. & Assocs.*, 2018 U.S. Dist. LEXIS 41161 (D. Or. 2018), would be available, it is not, nor are any other opinions, besides those already cited by JTM.  Indeed, *Heath v. JTM Cap. Management*, Case No. 18-cv-1887-T-30JSS (M.D.F.L. 2018)(unreported), which has already been cited (Mullery, Dkt. 44-1, Perry, Dkt. 42-1), dismissed allegations made against JTM

5

*without prejudice* and with leave to amend the consumer's complaint with additional documentation as to JTM's filing of collection lawsuits in state courts[4], see, Mullery, Dkt. 44-1 p.4, Perry, Dkt. 42-1 p. 4. Moreover, the district court in Heath said:

> "The Court notes that in JTM's argument under this part of the definition, many of the decisions JTM cites in support of dismissal took place at summary judgment. Understandably, whether a business's "principal purpose" is debt collection turns on the facts of each case."

*See,* (Mullery, Dkt. 44-1 p.4, Perry, Dkt. 42-1 p. 4).

Moreover, unlike Plaintiff's Complaints here, the consumer Complaint in Heath contained no factual allegations as to how or why JTM was a debt collector, but merely reiterated that it fit the definition of §1692a(6) (*See*, Mullery, Dkt. 52-3 p.3, Perry, Dkt. 49-3 p. 3.

Plaintiffs Mullery and Perry have not been permitted to conduct discovery as to JTM's principal purpose and, thus far JTM has only admitted to purchasing and "outsourcing" defaulted consumer debts, see, Dkt 51, pp. 3-5. JTM has never detailed what, exactly, that "outsourcing" entails, its own involvement in the process and what, if any, other business purposes JTM may have. For example, in *Henson v. Santander Consumer USA,* 137 S. Ct. 1718, 198 L.Ed.2d 177 (2017), Santander not only purchased defaulted consumer debts, it was also an international bank and lender, originating loans and selling a variety of financial

---

4. According to the docket in *Heath*, that Plaintiff voluntarily dismissed the case rather than amending the Complaint.

products to both businesses and consumers.[5]  It is both possible that Plaintiffs may find, through discovery, that Defendant JTM's involvement in the "outsourcing" of collection is enough to constitute direct or indirect collection or vicarious liability – despite the fact that Defendant claims not to directly communicate with consumers. For example, it is not uncommon for a debt buyer to run consumer profiles through computer software which purports to determine the collectability of each account, group portfolios of debt by type or age, collect some debts themselves, outsource other debts to collectors, and resell debts.[6]  This level of involvement and control – especially if it is the primary purpose of Defendant's business – can be seen as nothing but principal purpose collection.

> III. Although The FDCPA's Application To Debt Buyers Is Clear From The Statute Itself, Such A Reading Is Also Consistent With Its Legislative History.

Finally, Defendant JTM's response to Plaintiffs' supplemental inapposite, unavailing authority from the Third Circuit of Barbato, 916 F.3d at 268-69 is wide of the mark, *see*, *Mullery*, Dkt. 51, at pp. 6-8; Perry, Dkt. 49, at pp. 6-8.  Defendant first claims that the Appellate Court's reasoning in *Barbato* was "circular" in

---

5. *See*, https://santanderconsumerusa.com/our-company, "Santander Consumer USA Holdings Inc. (NYSE:SC) is a public, full-service, consumer finance company focused on vehicle finance and third-party servicing. The company manages accounts for more than two million customers across all credit profiles.", last accessed May 3, 2019.
6. *See*, the Federal Trade Commission's "Structure and Practices of the Debt Buying Industry", 2013, available online at https://www.ftc.gov/sites/default/files/documents/ reports/structure-and-practices-debt-buying-industry/debtbuyingreport.pdf at pp. 20-21.

7

finding that "collection" could be defined as "that which is to be collected" rather than merely "the act or process of collecting", claiming, without explanation, that this would require the Court to "disregard the myriad of ambiguities and inconsistencies present in the text of the FDCPA", *see*, Mullery, Dkt. 51, at p. 7; Perry, Dkt. 49 at p. 7.  JTM, however, never explains what is "ambiguous" or "circular" about holding that a debt buyer – whose sole purpose is to capitalize on buying large portfolios of defaulted consumer debts and hiring agencies to collect them from consumers – is a collector.

JTM then claims that *Barbato* should have resorted to the [FDCPA's] legislative history for clarity.[7]  *Barbato*, in fact, did analyze the legislative history of the FDCPA and in no way "side-stepped" this issue, as Defendant baldly claims, *see*, *Barbato*, 916 F.3d at 268-69; Mullery, Dkt. 51, at p. 7; Perry, Dkt. 49 at p. 7).  The Court in *Barbato* found that a debt buyer, like JTM, despite not having any direct contact with a consumer, has more in common with a collector than a creditor:

> Unlike a traditional creditor, such as a bank or a retail outlet that has its own incentive to cultivate good will among its customers and for which debt collection is one of perhaps many parts of its business, an independent debt collector like Crown has only one need for consumers: for them to pay their debts. As market-based incentives go, that makes it far more like a repo man than a creditor and gives it every incentive to hire the most effective repo man to boot.

*Barbato*, 916 F.3d at 268-69.

---

7. Defendant cites Henson for the proposition that Congress never had the chance to consider regulation of the debt-buying industry, and the recent decision in *Obduskey v. McCarthy & Holthus*, 139 S.Ct. 1029 (2019) — which involved the enforcement of a security interest, and is completely inapposite here.

8

Despite its analysis of the legislative history of the FDCPA, the Appellate Court in *Barbato* also found that such an analysis is not necessary because the statute is clear in that it was intended to regulate "'*any* business the principal purpose of which is the collection of any debts' without regard to whether that entity delegates its collecting activities", *see*, *Barbato*, 916 F.3d at 269.

A debt buyer need not have any interaction with a consumer directly to commit unlawful collection communications. This is what occurred here, where Defendant either ignored, failed to request from its predecessors, or failed to communicate to its hired collectors that Ms. Mullery and Ms. Perry had attorneys and refused to pay these debts. As the Appellate Court in *Barbato* affirmed, "an entity that otherwise meets the "principal purpose" definition cannot avoid the dictates of the FDCPA merely by hiring a third party to do its collecting", see, *Barbato,* 916 F.3d at 261.

## CONCLUSION

Plaintiffs Mullery and Perry deserve the same opportunity as the consumer in Barbato to seek discovery as to Defendant JTM's principal business purpose and what involvement it has in the "outsourcing" of debts to effectively demonstrate, on summary judgment, that JTM is unequivocally a principal purpose debt collector. Dismissal on a Defendant's Rule 12(b)(6) motions is simply unwarranted and should be denied.

    Respectfully submitted,
    Theresa Mullery & Amanda Perry

By: /s/ David J. Philipps
One of their attorneys

Date: May 3, 2019

David J. Philipps
Mary E. Philipps
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com

Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, New York 10004
Brian@Bromberglawoffice.com

# CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2019 a copy of the foregoing **Plaintiffs' Supplemental Reply Brief Regarding State Definitions Of "Debt Collector"** filed electronically. Notice of this filing was sent to the following parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

| | |
|---|---|
| Brendan H. Little | blittle@lippes.com |
| Richard M. Scherer | rscherer@lippes.com |
| Lippes, Mathias, Wexler, | |
|    Friedman, LLP | |
| 50 Fountain Plaza | |
| Suite 1700 | |
| Buffalo, New York 14202 | |

David J. Philipps                    davephilipps@aol.com
Mary E. Philipps                    mephilipps@aol.com
Philipps & Philipps, Ltd.
9760 S. Roberts Road
Suite One
Palos Hills, Illinois 60465

Brian L. Bromberg                Brian@Bromberglawoffice.com
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, New York 10004